IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES FRISELLA | * | |
| Plaintiff, | * | Civil Action No. AMD 02 CV 3435 |
| vs. | * | |
| TRANSOCEANIC CABLE SHIP COMPANY, INC., and ABC INSURANCE COMPANY | * | |
| | * | |
| Defendants. | | |

******

**KENYON REPLY DECLARATION IN SUPPORT
OF MOTION TO DISMISS PURSUANT TO RULE 37**

1.  TODD P. KENYON, hereby declares, under penalty of perjury, that I am a Member of the law firm Betancourt, Van Hemmen, Greco & Kenyon, attorneys for defendant Transoceanic Cable Ship Company, Inc. ("Transoceanic"). I submit this reply declaration in support of Transoceanic's Motion to Dismiss the Complaint pursuant to Rule 37.

2.  It is astounding that Plaintiff has continued to act with contempt toward this Court's discovery and scheduling orders, not only after the undersigned's letter to the Court dated November 5, 2003, but also well after this motion was filed seeking dismissal of his Complaint. Plaintiff during the course of this litigation has never been forthright concerning his availability for a deposition and medical examination. This contumacious conduct continues to this day.

<u>Plaintiff's Continuing Misrepresentations Concerning Availability</u>

3.  Incredibly, since the present motion was filed, Plaintiff has continued to affirmatively misrepresent his availability. It has proved impossible to rely on any statement made by Plaintiff concerning his obligation to comply with the Court's Orders:

- In a letter sent one week after this motion to dismiss was filed, Plaintiff's counsel advised that Plaintiff "will be available to come to Baltimore on January 6, 2003." (See Blondell Letter of November 17, 2003 attached as Exhibit 11.) The undersigned responded that we would have to defer to the Court concerning the possibility of scheduling a deposition and medical examination then. (See Kenyon Letter of November 20, 2003 attached as Exhibit 12.)

- Plaintiff's advice that he was available to travel to Baltimore on January 6, 2003 proved to be false. In his Opposition to the pending motion, and, tellingly, in support of a motion for continuance, Plaintiff's position changed and he was now unavailable to return until February, 2004 or perhaps 4 to 8 weeks later. (See Opposition at ¶13.)

- When Plaintiff's motion for a continuance was denied by this Court's December 1, 2003 Memorandum Order, Plaintiff again changed his position on availability and advised that he would be available "beginning the week of December 8, 2003." (See Blondell Letter of December 2, 2003 attached as Exhibit 13.) The undersigned again responded that we would have to defer to the Court concerning the scheduling of Plaintiff's deposition and medical examination. (See Kenyon Telefax dated December 2, 2003 attached as Exhibit 14.)

- One day later on December 3, 2003, Plaintiff again changed his position on availability, advising that he would not be returning until February 19, 2003. And, further, that his employer "would not allow him to come home." (See Blondell Letter of December 2 (sic), 2003 attached as Exhibit 15.)

4. Apparently Plaintiff now believes that the best tactical position to take is to go back to his previous position that he will be unavailable until late February, 2004. It seems that none of these statements concerning availability have been made with any regard for the actual truth of the matter, not to mention this Court's Orders. Further, although Mr. Blondell states that Plaintiff's employer will not let him come home, the letter he attaches from the employer (see the attachment to Exhibit 15) says nothing concerning any request by Plaintiff to come home. It simply advises of Plaintiff's standard rotation schedule on and off the vessel.

5. Plaintiff and his counsel thus continue to operate as if this Court's Orders do not exist. They continue to change and shift their representations as to availability depending on their skewed perception of the tactical advantage gained. This behavior continues full speed ahead even after this Court's latest Memorandum Order, which concluded that Plaintiff had already acted contumaciously and in bad faith during this litigation. Plaintiff should not be permitted to continue to act with such conscious and manifest disregard of this Court's Orders, the Federal and Local Rules and the rights of Transoceanic as a defendant in Federal Court.

Plaintiff's Shipboard Rotation Schedule and the Trial Schedule in this Case

6. As the attached Chiesa Declaration dated December 3, 2003 makes clear (attached as Exhibit 16), Plaintiff is a seaman serving aboard Waterman ships on a routine rotational basis. He serves four months on and two months off. This is crucial since Plaintiff knew when he returned to sea on October 19, 2003, that he was scheduled to leave the ship to return home on February 19, 2004. Significantly, trial has been scheduled for a date in February, 2004 since the original Scheduling Order in this case dated January 9, 2003. Based on his normal schedule, Plaintiff thus knew well before October, 2003 that his sea service schedule would conflict with the scheduled trial date in this case. Yet he made no effort to revise his ship board schedule or to request a continuance in the trial date in a timely fashion many months ago.

7. Plaintiff has thus freely chosen to maintain his normal sea service schedule, rather than comply with the Court's discovery and scheduling orders. Maintaining his sea schedule at his convenience has resulted in extreme prejudice to Transoceanic, which has been unable to take his deposition or hold a medical examination. On his own admission, he will be unavailable for the trial scheduled for February 17, 2004, and, in effect, has abandoned his claim. It is mind boggling that Plaintiff continues to believe that he has the right to continue to pursue his claim against Transoceanic under these circumstances in this Court.

8. Additionally, the Chiesa Declaration confirms that Plaintiff was freely available to participate in discovery from mid-August, 2003 through mid-October, 2003. Yet he and his counsel refused to provide this information to the undersigned when repeatedly requested in August and October, 2003. Plaintiff's refusal to participate in discovery was assuredly a conscious tactical decision, taken in hopes of

preventing Transoceanic from developing its defenses to his claim. Transoceanic's willingness to work with Plaintiff in view of his sea service was answered with an utter lack of good faith and honesty on his part.

<u>Misrepresentations in Plaintiff's Opposition</u>

9.   Plaintiff has chosen to oppose Transoceanic's motion to dismiss with an unsworn "Opposition." The Opposition contains certain misrepresentations that we must address. First, Plaintiff's counsel states that he called the undersigned on October 1, 2003 to discuss "scheduling Plaintiff's deposition and medical examination during the weeks of October 6 or October 13, 2003." Opposition at ¶17. This statement is untrue. Mr. Blondell called the undersigned on October 2, 2003 to advise that Plaintiff would be back from sea and available the following week (October 6-10) and would then be back in port in November. There was no discussion of any availability during the week of October 13, 2003. In fact, Mr. Blondell himself confirms this in his November 17, 2003, letter to the undersigned where he acknowledged that the only dates discussed where those during the week of October 6-10. He stated the following: "after not hearing from me and when you indicated that you could not conduct his deposition and schedule his medical examination during the week of October 6-10, 2003, Mr. Frisella shipped out for the Middle East." (See the November 17, 2003 letter attached as Exhibit 11 .)[1]

---

[1] The undersigned could not conduct a deposition and arrange a medical examination on such short notice due to unmoveable commitments in another case, and of course, as Mr. Blondell is no doubt aware, the practical impossibility of scheduling a medical examination with an orthopedist on such short notice. Further, it is now clear that Plaintiff was in fact available from August through October, 2003, not just the one week period Plaintiff's counsel sought to convey in the October 2nd telephone call. Plaintiff's seeming to make himself available for one week right before he is scheduled to ship back out to sea, while being affirmatively untruthful as to his actual availability, was a conscious and transparent litigation tactic aimed at denying Transoceanic the ability to defend against his claim.

10. Plaintiff's counsel also states that he left two telephone voice mail messages at my office during September, 2003 concerning Plaintiff's deposition and medical examination. I never received any such voice mail messages. Further, as the Declaration of our Office Manger and Paralegal, Carol Haimowitz, states, she never received or heard any such voice mail messages during her normal daily procedure for checking all voice mail boxes at this firm. (See Exhibit 17 attached.) Moreover, solely as a matter of common sense, if I had received a phone message from an opposing counsel to schedule discovery that I had requested - I would have assuredly returned the call. There would be no reason not to.

<u>Untimeliness of the Pre-Trial Order</u>

11. As acknowledged by Plaintiff's counsel in his letter of December 2, 2003, the Pretrial Order in this case is due to be filed on December 12, 2003. Under Local Rule 106(3), Plaintiff was required to serve his draft fifteen days before December 12th or on November 27, 2003. Plaintiff did not, however, serve the draft Pretrial Order in a timely fashion. It was served instead by telefax at 16:50 on December 3, 2003. (See Exhibit 15.) Plaintiff has thus failed to present the proposed pretrial order in a timely fashion as directed by this Court's December 1, 2003 Memorandum Order and the Local Rules.

12. Moreover, Plaintiff's failure to participate in discovery has severely and insurmountably prejudiced Transoceanic with respect to the Pretrial Order. Transoceanic is unable to properly prepare its sections of the Pretrial Order without having had the benefit of discovery of Plaintiff. Plaintiff's bad faith in ignoring the Court's orders has thus resulted in the inability of the parties to timely file a pretrial order that in any meaningful way complies with the requirements of the Local Rules. This also provides a basis for dismissal based on this Court's admonition in its December 1, 2003 Memorandum Order that the Pretrial

Order must be presented in a timely fashion or the case will be dismissed.  Under the circumstances, it is impossible to properly comply with the Local Rules concerning the content of a pretrial order where the Plaintiff has refused to participate in discovery.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed Red Bank, New Jersey this 9th day of December, 2003.

/s/

TODD P. KENYON